**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**NEWARK VICINAGE**

| | |
|---|---|
| FROMKIN BROTHERS, INC. <br><br>                 Plaintiff, <br><br> vs. <br><br> KÄHRS INTERNATIONAL, INC. <br> and SPARTAN SURFACES, LLC, <br><br>                 Defendant. | CIVIL NO. 2:23-cv-18094-CCC-JBC <br><br> **AMENDED COMPLAINT** |

Plaintiff Fromkin Brothers, Inc., by and through its attorneys, Hinckley, Allen & Snyder LLP, as and for its Complaint against Defendants Kährs International, Inc. and Spartan Services, LLC hereby alleges as follows:

**THE PARTIES**

1.  Fromkin Brothers, Inc. ("Fromkin") is a domestic business corporation organized under the laws of the State of New Jersey, with a principal place of business located at 125 Clearview Road, Edison, NJ 08837.

2.  Upon information and belief, Kährs International, Inc. ("Kährs") is a corporation organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 317 Northlake Boulevard, Suite 1016, Altamonte Springs, FL 32701.

3.  Upon information and belief, Spartan Surfaces, LLC ("Spartan") is a limited liability corporation organized under the laws of State of Delaware, with a principal place of business located at 10 South Hays Street, Bel Air, MD 21014.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, based on diversity of citizenship, because the matter involves an amount in controversy that exceeds $75,000, exclusive of interests and costs, and there exists complete diversity between the parties, as Fromkin is not a citizen of the same state as any Defendant:

      a.   Fromkin is a citizen of the State of New Jersey in that it is a corporation organized and existing under the laws or, and has a principal place of business in, the State of New Jersey;

      b.   Upon information and belief, Kährs is a citizen of both the Commonwealth of Pennsylvania and the State of Florida, as it is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business in the State of Florida; and

      c.   Upon information and belief, Spartan, as a limited liability company, is a citizen of the State of Delaware and/or the State of Maryland.  Upon information and belief, no member of Spartan's limited liability company is a citizen of the State of New Jersey.

5.      Venue properly lies in this district because a substantial part of the events or omissions giving rise to Fromkin's claims occurred in this judicial district, as the construction project out of which the dispute arises is located in Paramus, Bergen County, New Jersey.

## BACKGROUND

6.      Fromkin is a New Jersey-based architectural finishing company created in 1912 that, among other services, furnishes and installs a variety of flooring products for construction projects throughout the Northeast.

7.    This dispute arises out of defective resilient flooring manufactured by Kährs and distributed by Spartan to Fromkin for installation in a new seven-story hospital building known as "The New Valley Hospital," located at 650 Winters Avenue, Paramus, New Jersey (the "Project").

8.    Valley Health Systems, as owner of the Project, retained Torcon, Inc. ("Torcon") to serve as general contractor for construction of the Project.

9.    Torcon then entered into a subcontract with Fromkin on or about June 28, 2021, whereby Fromkin agreed to furnish and install resilient flooring and carpeting at the Project.

10.    The Project Architect, HDR, specified the use of resilient quartz tile, specifically Upofloor Quartz Tile flooring (the "Tile"), manufactured by Kährs.  Upon information and belief, HDR reviewed and relied on Kährs' product data sheet, warranty, and other marketing materials in specifying the Tiles for the Project.

11.    Fromkin pulled and compiled Kährs product data sheet, warranty, and other marketing materials from Kahrs' website when compiling information to be included with the submittal for the Tiles, which was submitted to HDR by Fromkin in or about September 2021 and approved by HDR.

12.    Fromkin purchased the Tile in four different colorways and an adhesive from Spartan, a Kährs distributor, in December 2022 for a total cost of $356,298 (the "Tile Order"). Specifically, Fromkin purchased: (a) 87,552 sq. ft. of UPO8101; (b) 28,176 sq. ft. of UPO8102; (c) 16,464 sq. ft. of UPO8103; and (d) 8,880 sq. ft. of UPO8104.  A copy of the Spartan invoice is attached hereto as **Exhibit A**.  The Tiles were delivered in December 2022.

13.    The Tiles were installed in certain areas on all floors of the Project from December 20, 2022 through April 20, 2023.  The Tiles were installed on a concrete slab on the first floor and above suspended metal decks on floors two through seven.

14.    On or about March 16, 2023, Fromkin notified Kährs and Spartan that the Tiles were exhibiting gapping and shrinking after installation.

15.    On or about May 26, 2023, Kährs sent its representative and its consultant, Concrete Constructives, to inspect the defective Tiles.

16.    In April 2023, in light of the Tiles' exhibited defects, Fromkin retained a nationally recognized independent consultant, George Donnelly Testing and Inspection ("Donnelly") to similarly perform a site inspection and investigate the cause of the Tile defects. Donnelly also inspected the Project site on May 26, 2023 and had direct measurements and dimensional stability testing performed on Tiles installed throughout the Project.

17.    Kährs' product data sheet for the Tile represents that the dimensional stability of the Tile suffers less than 0.2% dimensional change when tested under method EN ISO 23999, a testing method intended as an accelerated aging of the Tiles by subjecting them to a heat source. A copy of Kährs' product data sheet is attached hereto as **<u>Exhibit B</u>**.  Donnelly used the same methodology as identified in Kährs' product data sheet when performing his dimensional testing on the Tiles.

18.    On June 22, 2023, Donnelly issued a report on his findings.  Results of the testing performed on the Tiles determined that Tiles from all colorways (8101-8104) manufactured by Kährs and supplied by Spartan showed data points equal to or greater than 0.2%, in direct contradiction of Kährs' product data specifications.  Donnelly concluded that nearly all of the Tiles (excluding a single lot, identified as lot 1001-3001 from colorway 8101) manufactured by

Kährs and supplied by Spartan for the Project were defective due to a lack of dimensional stability, and that the gapping and shrinking exhibited throughout the Project were caused by this manufacturing defect.

19.     Therefore, in accordance with Mr. Donnelly's findings, all of the Tiles manufactured by Kährs and supplied by Spartan, including the approximately 88,000 square feet of the Tiles previously installed by Fromkin at the Project, were found to be defective.

20.     Kährs' Upofloor Product Warranty warrants that "all Upofloor products … be free from defects in material and workmanship, under normal use and service, for a period of fifteen (15) years from the date of Buyer's invoice to the original end user."

21.     As a manufacturer, there is an expectation that Kährs performs sufficient quality control to ensure that its products, including the Tiles, meet its published and represented quality and performance standards.

22.     On August 9, 2023, counsel for Fromkin sent a letter to Kährs demanding that Kährs (a) reimburse Fromkin for the costs it has already incurred purchasing and installing alternative resilient tiles for the Project for areas where the defective Tiles were not yet installed; and (b) pay for any and all costs associated with removing all Tiles currently installed, the future purchase of alternative resilient tiles to replace the removed Tiles, and installation of the alternative resilient tiles.  Kährs never responded to Fromkin's demands.

23.     On August 10, 2023, Kährs forwarded the findings of Concrete Constructives' May 2023 inspection, which concluded that the Tile defects exhibited at the Project site were allegedly caused by the use of sodium silicate.  Kährs also speculated the cause could be Fromkin's alleged failure to use an appropriate trowel during installation.  Fromkin objected to Concrete Constructives' findings because, as confirmed by Donnelly, the Tiles on Floors 5-7

were installed on concrete substrate (where silicate was not used) using fine notched trowels (the trowel size claimed to be appropriate by Kährs) and yet still exhibited significant gapping and shrinkage, thereby contradicting Kährs' conclusions concerning causation.

24.    The Tiles manufactured by Kährs and distributed by Spartan did not perform as intended, warranted, and specified, and were not reasonably fit or suitable for their intended purpose.

25.    The defective Tiles are not only visually unacceptable and not in accordance with Kährs' published specifications, but the gapping and shrinking also creates a potentially unsuitable sanitary condition in the hospital.

26.    As a result of the defective Tiles manufactured by Kährs and supplied by Spartan for the Project, Fromkin has incurred costs exceeding $144,000 in order to investigate and repair the defective Tiles and procure certain alternative replacement tiles, and will continue to incur additional costs and damages in order to remedy the defects, including, without limitation, cold welding the previously installed defective Tiles as per the directives of Torcon and/or Valley Health Systems.

27.    Despite due demand, Kährs has to date failed or refused to remedy the issues and compensate Fromkin for costs already incurred as well as any and all costs Fromkin will incur related to remedying the defects.

**FIRST COUNT**
**(Breach of Express Warranty - Kährs)**

28.    Fromkin repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

29.     Kährs provided an express Product Warranty for its Upofloor Resilient Quartz Tile product that was used in the Project, which warranted that the Tile was to be free from defects in material and workmanship for fifteen (15) years.

30.     Kährs' product data sheet specifies that the Tiles will suffer less than 0.2% dimensional change when tested under method EN ISO 23999.

31.     Kährs includes its Product Warranty and product data sheet as part of its marketing materials and representations for the Tiles.

32.     Upon information and belief, HDR reviewed and relied on the descriptions, promises and affirmations contained in Kährs' express Product Warranty and product data sheet when specifying and approving the Tiles for the Project.

33.     The Tiles manufactured by Kährs did not meet, among other things, the dimensional stability specifications/performance standards identified in Kährs' product data sheet.

34.     Kährs breached its express warranty by manufacturing and supplying Tiles that were defectively manufactured, in direct contradiction to its promise that the Tiles would be free from defects in material and workmanship, and did not comply with Kährs' product specifications.

35.     Specifically, all of the Tiles manufactured by Kährs and supplied by Spartan, including the approximately 88,000 square feet of the Tiles previously installed by Fromkin at the Project, were found to be defective.

36.     As a direct and proximate result of Kährs' breach of warranty, Fromkin has suffered, and will continue to suffer, substantial damages, together with costs, interest and attorneys' fees, in an amount in excess of $75,000 and to be proven at trial.

## SECOND COUNT
### (Negligence – All Defendants)

37.     Fromkin repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

38.     The Tiles manufactured by Kährs and distributed by Spartan for the Project were not reasonably fit or suitable for their intended purpose.

39.     The Tiles manufactured by Kährs and distributed by Spartan for the Project did not meet, among other things, the dimensional stability specifications/performance standards identified in Kährs' product data sheet.

40.     Kährs, as a manufacturer, and Spartan, as a distributor, owed a duty to exercise reasonable case in manufacturing and distributing the Tiles to ensure that the Tiles met the manufacturer's standards and were suitable for their intended purpose.

41.     The Tiles manufactured by Kährs and distributed by Spartan were defective, failed to meet the manufacturer's standards, and were not suitable for their intended purpose, resulting in harm to the product itself and requiring Fromkin to investigate and remediate the defective product.

42.     Kährs and Spartan are liable to Fromkin under principles of negligence on account of manufacturing and distributing defective Tile for use on the Project.

43.     As a direct and proximate result of Kährs manufacturing and Spartan distributing defective Tile for the Project, Fromkin has suffered, and will continue to suffer, substantial damages, together with costs, interest and attorneys' fees, in an amount in excess of $75,000 and to be proven at trial.

## THIRD COUNT
### (Fraudulent Misrepresentation – Kährs)

8

44.     Fromkin repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

45.     As detailed herein, Kährs' product data sheet specifies that the Tiles will suffer less than 0.2% dimensional change when tested under method EN ISO 23999.  However, the vast majority of Tiles manufactured by Kährs failed to meet this specification.

46.     Specifically, all of the Tiles manufactured by Kährs and supplied by Spartan, including the approximately 88,000 square feet of the Tiles previously installed by Fromkin at the Project, were found to be defective.

47.     Kährs intentionally misrepresented material facts to Fromkin, including without limitation falsely representing the quality, characteristics and expected performance of the Tiles.

48.     Kährs knew these misrepresentations were false at the time they were made and intended for Fromkin to rely on such misrepresentations.

49.     Fromkin trusted and relied on the representations made by Kährs, as the manufacturer, concerning the quality, characteristics and expected performance of the Tiles.

50.     Kährs' representations concerning the quality, characteristics and expected performance of the Tiles were material to Fromkin's purchase of the Tiles.

51.     Fromkin reasonably relied on those fraudulent misrepresentations and acted to its detriment in reliance thereon by procuring and installing the Tiles manufactured by Kährs at the Project.

52.     Fromkin honestly believed the misrepresentations concerning the quality, characteristics and expected performance of the Tiles and justifiably relied on Kährs' product data sheet, warranty, and other marketing materials when pulling and compiling the information

to be included with its submittal for the Tiles, and when procuring and installing the Tiles at the Project.

53.     The Tiles manufactured by Kährs were defective, failed to meet the manufacturer's standards, and were not suitable for their intended purpose, resulting in harm to the product itself and requiring Fromkin to investigate and remediate the defective product.

54.     As a direct and proximate result of Fromkin's reasonable reliance on Kährs' misrepresentations, Fromkin has suffered, and will continue to suffer, substantial damages, together with costs, interest and attorneys' fees, in an amount in excess of $75,000 and to be proven at trial.

## FOURTH COUNT
### (Negligent Misrepresentation – Kährs)

55.     Fromkin repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

56.     As detailed herein, Kährs' product data sheet specifies that the Tiles will suffer less than 0.2% dimensional change when tested under method EN ISO 23999.  However, the vast majority of Tiles manufactured by Kährs failed to meet this specification.

57.     Specifically, all of the Tiles manufactured by Kährs and supplied by Spartan, including the approximately 88,000 square feet of the Tiles previously installed by Fromkin at the Project, were found to be defective.

58.     Kährs negligently misrepresented material facts to Fromkin, including but not limited to incorrectly representing the quality, characteristics and expected performance of the Tiles.

59.     Fromkin relied on those negligent misrepresentations and acted to its detriment in reliance thereon.

60.     Fromkin honestly believed the misrepresentations concerning the quality, characteristics and expected performance of the Tiles and justifiably relied on them when Fromkin procured and installed the Tiles at the Project.

61.     The Tiles manufactured by Kährs were defective, failed to meet the manufacturer's standards, and were not suitable for their intended purpose, resulting in harm to the product itself and requiring Fromkin to investigate and remediate the defective product.

62.     As a direct and proximate result of Fromkin's reasonable reliance on Kährs' misrepresentations, Fromkin has suffered, and will continue to suffer, substantial damages, together with costs, interest and attorneys' fees, in an amount in excess of $75,000 and to be proven at trial.

### FIFTH COUNT
### (Breach of Implied Warranties – Spartan)

63.     Fromkin repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

64.     Spartan, as a distributor of flooring materials, impliedly warranted that the Tiles were of good, proper and merchantable quality and were reasonably fit and suitable for their intended use.

65.     Spartan knew or should have known that Fromkin was purchasing the Tiles for a commercial purpose and that such Tiles would be installed across a large square foot area based on the quantity of items ordered.

66.     As detailed herein, Spartan breached these implied warranties by, among other things, supplying Tiles that were defectively manufactured and that were not fit for the purposes for which they were intended, resulting in harm to the product itself

67.    As a direct and proximate result of Spartan's breaches of warranty, Fromkin has suffered, and will continue to suffer, substantial damages, together with costs, interest and attorneys' fees, in an amount in excess of $75,000 and to be proven at trial.

### SIXTH COUNT
### (Breach of Contract – Spartan)

68.    Fromkin repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

69.    Fromkin contracted with Spartan to purchase approximately 140,000 sq. ft. of the Tiles from Spartan, as reflected in Spartan's December 8, 2022 invoice. See **Exhibit A**.

70.    Fromkin fully and faithfully performed its obligations under the contract.

71.    Spartan supplied and delivered the Tiles to Fromkin for the Project per its contract with Fromkin.

72.    Spartan breached its contract with Fromkin by providing defective Tiles.

73.    As a direct and proximate result of Kährs' and Spartan's respective breaches of warranty, Fromkin has suffered, and will continue to suffer, substantial damages, together with costs, interest and attorneys' fees, in an amount in excess of $75,000 and to be proven at trial.

**WHEREFORE**, Plaintiff Fromkin respectfully requests this Honorable Court:

A.    Enter judgment to Plaintiff Fromkin and against Defendants Kährs and Spartan on the claims asserted herein;

B.    Award monetary damages to Plaintiff Fromkin in excess of $75,000 in an amount to be proven at trial on the claims asserted herein, plus interest, costs and reasonable attorneys' fees; and

C.    Grant such further relief this Court deems just and proper.

Date:   December 8, 2023                    HINCKLEY, ALLEN & SNYDER LLP

                                            _____/s/ Mitchell R. Edwards_____
                                            Mitchell R. Edwards, Esq. (ID#021751999)
                                            100 Westminster St # 1500
                                            Providence, RI 02903
                                            (401) 274-2000 – Office
                                            (401) 277-9600 – Fax
                                            medwards@hinckleyallen.com

#64321911v2